

**Tagged for Publication**

**ORDERED in the Southern District of Florida on September 29, 2011.**

                                                                                         John K. Olson, Judge
                                                                                         United States Bankruptcy Court

___

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division**
www.flsb.uscourts.gov

**In re**:

        Craig **Piazza**,

                                Debtor.
_____

Case No. 10-40807-JKO

Chapter 7

**Order Denying Motion for Reconsideration
[ECF No. 47]**

The Debtor has filed a motion for reconsideration of this court's June 17, 2011 order dismissing this case. The motion was filed within 14 days after entry of the order and is accordingly governed by Fed. R. Bankr. P. 9023. A motion for reconsideration under Rule 9023, applying Fed. R. Civ. P. 59(e), may be granted on four grounds: (1) the judgment is based upon manifest errors of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) amendment is necessary to prevent manifest injustice; or (4) there is an intervening change in controlling law. *In re Arden Properties, Inc.*, 248 B.R. 164 (Bankr. D. Ariz. 2000); *see also In re Prince*, 85 F.3d 314, 36 (7th Cir. 1996), *cert. denied*, 519 U.S. 1040 (1996). The decision to grant or deny a Rule 59(e) motion is entrusted to the sound judgment of the trial court and may be reversed only for an

abuse of discretion. *Id.* A party may not utilize Rule 59(e) to complete presentation of the party's case after the court has ruled against that party. *Matter of Reese*, 91 F.3d 37 (7th Cir. 1996).

The Debtor argues that the order contained manifest errors of law in that the court considered the issue of bad faith in connection with 11 U.S.C. § 707(a). The Debtor cites to *In re Adolph*, 441 B.R. 909 (Bankr. N.D. Ill. 2011), *In re Lobera*, 2011 WL 941331 (Bankr. D.N.M. 2011), and *Myers v. Toojay's Mgmt. Corp. (In re Myers)*, 640 F.3d. 1278 (11th Cir. 2011), as supporting authority. First, the Debtor argues that the phrase "bad faith" does not appear in § 707(a), and that the list of examples of dismissal for cause in § 707(a) - while not exclusive - limit dismissal to post-petition procedural issues. Second, the Debtor argues that the bankruptcy code provides other, more specific statutory grounds for dealing with debtor misconduct, and that those provisions should therefore govern rather than the more general provisions of § 707(a). Third, the Debtor argues that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") explicitly added a bad faith consideration under § 707(b) and neglected to include the same provision within § 707(a), showing by negative implication that § 707(a) should not be construed to permit a bad faith inquiry. The Debtor advances this third argument by citing to *Myers* as controlling authority regarding the statutory construction of § 707 (specifically that Congress is presumed to have acted intentionally where particular language is included in one part but not another part of the same statute) and that this court should not rewrite § 707(a) to contain a "bad faith" provision.

*Limitation to Post-petition Procedural Issues*

The Debtor's first argument (that dismissal for cause is limited to post-petition procedural issues) is not persuasive. While the examples listed in § 707(a) could be characterized as mere post-petition procedural issues, they may also be characterized as requirements placed upon debtors to

show they have filed their case in good faith and are moving it forward in good faith. If a debtor were to create an unreasonable delay prejudicing creditors, it could be said that he is using the powers of the bankruptcy code and the bankruptcy court in bad faith such that dismissal is appropriate under § 707(a)(1). If a debtor were to fail to pay fees as required under 28 U.S.C. 1930, it may be an indication that the debtor did not file the case with a good faith purpose such that dismissal is appropriate under § 707(a)(2). The numerous disclosures required by § 521 provide insight as to any debtor misconduct or bad faith purpose for filing a case, and failure to comply with § 521 disclosure requirements may indicate that the Debtor is not proceeding in good faith such that dismissal is appropriate under § 707(a)(3). And, as previously noted in the June 17, 2011 Order Granting Motion to Dismiss, the list of examples which may constitute cause for dismissal in § 707(a) is a non-exclusive list such that bankruptcy courts may find non-enumerated debtor conduct or inaction to constitute cause for dismissal under § 707(a). *See* [ECF No. 45]; *see also In re Zick*, 941 F.2d 1124, 1127 (6th Cir. 1991). The argument that § 707(a) dismissal is appropriate only for post-petition procedural issues is unpersuasive.

*Preclusion of Bad Faith Inquiry by Other More Specific Provisions*

The Debtor's second argument (that bad faith dismissal under § 707(a) is precluded by remedies provided by other more explicit code sections dealing with similar misconduct) is similarly unpersuasive. The Debtor cites to *Morales v. Trans World, Inc*., 504 U.S. 374, 384-85 (1992), where Justice Scalia pronounces the rule of statutory construction "that the specific governs the general." In *Morales,* the Court determined that the Airline Deregulation Act of 1978 (ADA) expressly preempted a state deceptive practices law as applied to airline advertising. One of the arguments against the preemption of state law in that case was the fact that there is a saving clause

in the Federal Aviation Act of 1958 (FAA), which provided that federal regulations shall not "in any way abridge or alter the remedies now existing at common law or by statute." *Morales*, 504 U.S. at 378. The Court held that the more specific provisions of the later-enacted ADA which provide for federal preemption of state enforcement actions related to airline rates, routes, or services trump the less specific, earlier enacted savings clause of the FAA.

The differences between the provisions of § 707(a) and other sections of the bankruptcy code which deal with debtor misconduct are not analogous to the difference between the saving clause of the FAA and the preemption clause of the ADA. Section 707(a) is not directly at odds with other code provisions as was the case with certain provisions of the FAA and ADA. It is true that § 707(a) addresses some of the same general issues as other areas of the bankruptcy code (such as a § 727 objection to discharge or a § 523 objection to discharge of certain debts) but it is also true that these provisions provide very different remedies under different circumstances even if they require similar factual considerations. The similar yet distinct qualities of § 707(a) and § 727 were recognized by Judge Grossman in the Eastern District of New York when he wrote that, "[a]lthough the elements of proof under sections 707(a) and 727(a) overlap in some instances, the consequences are vastly different." *In re Parikh*, – B.R. –, 2011 WL 2119031, at *16 (Bankr. E.D.N.Y. May 24, 2011). Judge Grossman went on to describe § 727 as "a statute requiring very specific findings regarding a debtor's conduct which results in the imposition of the severe penalty of denial of the discharge" while noting that § 707(a) "is more subjective in its application resulting in a much less severe consequence to a debtor." *Id.* at *17. The Debtor has failed to persuade this court that § 707(a) dismissal is precluded by other code remedies which may be applicable to the facts presented.

*Proper Statutory Construction of § 707(a)*

The Debtor's third argument is that there is a negative implication to be drawn from inclusion of the term "bad faith" in § 707(b) and the lack of its inclusion in § 707(a). An overriding congressional policy consideration in the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") was to curtail abusive filings, particularly by consumer debtors. This is evident in, *inter alia*, § 707(b)'s "means test." The congressional concern is less explicit in § 707(a), which applies to both consumer and non-consumer filings. While it is true that Congress did not amend § 707(a) to explicitly prohibit bad faith filings as it did with §707(b), the § 707(a) list of grounds giving rise to dismissal "for cause" is a non-exclusive list. *See* 11 U.S.C. § 102(3). The Debtor essentially asks this court to find that Congress intended BAPCPA to prohibit bad faith dismissal under § 707(a), but this is not tenable. The Debtor's negative implication argument could indicate any number of possible congressional motivations – any one of which would be more plausible than congressional acceptance of bad faith filings in non-consumer cases. In *Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364 (3d Cir. 2007), the Third Circuit rejected this negative implication argument, explaining that it is only appropriate where the separate provisions are part of a package or connected in a way that Congress must have meant to exclude the unmentioned item. *Perlin* reasoned that, "from a historical perspective, Congress has treated consumer filings under section 707(b) and consumer/non-consumer filings under section 707(a) differently, not as part of a package or 'commonly associated group our series.'" *Id*. at 18 (citing *United States v. Vonn*, 535 U.S. 55, 65 (2002)). The Third Circuit did refuse to dismiss the case in *Perlin*, but only after applying a bad faith, totality of the circumstances analysis and finding that a debtor's ability to pay alone is not enough to constitute cause for dismissal under §707(a). *Perlin*, 497 F.3d at 374. The Supreme Court has noted that, "negative implications raised by disparate provisions are

strongest when the portions of a statute treated differently had already been joined together and were being considered simultaneously when the language raising the implication was inserted." *Lindh v. Murphy*, 521 U.S. 320, 330 (1997). Therefore, since BAPCPA inserted the term "bad faith" into § 707(b) and did not simultaneously consider the other provisions of § 707, any implication to be drawn would be weak given the historically different enactments of §707(a) and §707(b).

The Debtor further argues that the proper statutory construction of §707(a) is controlled by *Myers v. Toojay's Mgmt. Corp. (In re Myers)*, 640 F.3d. 1278 (11th Cir. 2011). *Myers* determined what protections against discriminatory treatment were provided by § 525(b), and came to its conclusion in part by comparison to § 525(a). Section 525(b) prohibits private employers from firing (or discriminating against) an individual based upon a history of bankruptcy in the same manner that § 525(a) prohibits a government employer from doing so. These sections contain very similar language and both clearly prohibit the termination of someone's employment because he or she filed bankruptcy. The relevant language from § 525(a) states that, "a governmental unit may not . . . deny employment to, terminate the employment of, or discriminate with respect to employment against . . . " an individual with a history of bankruptcy, while the relevant language of § 525(b) states that, "[n]o private employer may terminate the employment of, or discriminate with respect to employment against . . . " an individual with a history of bankruptcy. The phrase "deny employment to" present in § 525(a) is conspicuously absent from §525(b). In such a context, "where Congress includes particular language in one section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Myers* at 1284 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)). But § 707(a) and § 707(b) do not contain such identical language and are not even written in a similar manner such that an implication can be drawn from the absence of the phrase "bad faith" in the *non-exclusive* list of

-6-

"for cause" dismissal under § 707(a). Section 707(b) is a highly specific subsection dealing with abusive filings by consumer debtors, while § 707(a) applies to both consumer and non-consumer cases and allows for greater bankruptcy court discretion in determining what may constitute "cause" for dismissal. As this court determined in the June 17, 2011 dismissal order, "[b]ecause § 102(3) provides that 'includes' and 'including' are not limiting, § 707(a) is a non-exclusive list of factors which may constitute 'cause' for dismissal." *See* [ECF No. 45]; *see also In re Boca Village Assoc.*, 422 B.R. 318 (Bankr. S.D. Fla. 2009) (Hyman, C.J.). The June 17th dismissal order considered the facts of this case, found that they satisfied relevant "bad faith" factors, and accordingly found that cause existed to dismiss this case under § 707(a).

*Debtor's Factual Argument in the Alternative*

The Debtor argues in the alternative that his case should not have been dismissed even applying a bad faith analysis under § 707(a). *See* [ECF No. 47]. The Debtor believes that the factors which the court considered in its analysis are inappropriate under a bad faith analysis, or more appropriately characterized as ability to pay considerations. *See id.* The Debtor first asserts that, while he does turn money over to his wife every month to cover bills jointly accrued, he does not pay $2000 per month into her 401(k) or pay off his wife's credit card debt. *See id.* The Debtor further asserts that the non-disclosure of the debt owed under the American Honda lease was inadvertent, and was disclosed as soon as it was noticed. *See id.* The Debtor also claims that the continued payment of his great aunt's mortgage is appropriate, and that his use of the bankruptcy code to avoid a single large creditor just prior to collection should not be considered a factor under a bad faith analysis. *See id.* He further asserts that considerations regarding his lifestyle and his

-7-

failure to make any attempt to restructure his financial affairs in order to repay creditors are ability to pay arguments which are not appropriately considered in a bad faith analysis. *See id.*

As explained in the June 17th dismissal order, the court agrees with the reasoning of other recent decisions in this district, and accordingly applies a totality of the circumstances analysis when conducting a bad faith inquiry under §707(a). *See* [ECF No. 45]; *see also In re Kane & Kane*, 406 B.R. 163 (Bankr. S.D. Fla. 2009) (Kimball, J.); *In re Boca Village Assoc.*, 422 B.R. 318 (Bankr. S.D. Fla. 2009) (Hyman, C.J.). It is true, as Debtor argues, that a debtor's ability to repay his debts alone is not enough to constitute cause for dismissal under § 707(a). The legislative history of the subsection states that, "[t]he section does not contemplate . . . that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy." H.R. Rep. No. 595, 95th Cong., 1st Sess. 380 (1977). However, while the Debtor argues that the factual considerations are erroneous or equate to ability to pay considerations, he has not shown that the court erred in holding that the facts of this case satisfy the relevant bad faith factors, or that the totality of the circumstances did not warrant dismissal. A party may not utilize Rule 59(e) to complete presentation of the party's case after the court has ruled against that party. *Matter of Reese*, 91 F.3d 37 (7th Cir. 1996). Because the Debtor has not established a manifest error of law or fact as required by Fed. R. Bankr. P. 9023, the motion for reconsideration **[ECF No. 47]** is **DENIED**.

SO ORDERED.

# # #

*The Clerk of Court is directed to provide copies of this order*
*to all interested parties registered to receive notice.*